UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LESTER K.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant

**DECISION AND ORDER**

1:25-CV-00089 CDH

## INTRODUCTION

Plaintiff Lester K. ("Plaintiff") seeks review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act (the "Act") (Dkt. 1). Under Rules 5 through 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) and Local Rule of Civil Procedure 5.5(d), the matter has been presented for decision by the parties' filing of motions for judgment on the pleadings. (*See* Dkt. 5; Dkt. 7; Dkt. 8). For the reasons that follow, the Court denies Plaintiff's motion and grants the Commissioner's motion.

## BACKGROUND

On April 25, 2022, Plaintiff protectively filed an application for DIB. (Dkt. 3 at 21, 77).[1] His application was initially denied on August 9, 2022, and upon reconsideration on March 2, 2023. (*Id*. at 21, 86-89, 99-101). Plaintiff requested a

[1] In referencing the administrative transcript, the Court has referred to the page numbers generated by CM/ECF and found in the upper right corner of the documents.

hearing before an administrative law judge ("ALJ") (*id.* at 21, 35-67), which was held on December 14, 2023 (*id.* at 35-67). On March 1, 2024, the ALJ issued an unfavorable decision. (*Id.* at 21-34). Plaintiff sought review from the Appeals Council, which denied his request on December 9, 2024. (*Id.* at 5-9). This action followed. (Dkt. 1).

## LEGAL STANDARD

### I. Administrative Determination of Disability

The Social Security Administration's ("SSA") regulations establish a five-step, sequential evaluation that an ALJ follows in determining whether a claimant is disabled within the meaning of the Act. *See Sczepanski v. Saul*, 946 F.3d 152, 156 (2d Cir. 2020); 20 C.F.R. § 404.1520(a). At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not, the ALJ continues to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *Id.* § 404.1520(a)(4)(ii). An impairment is "severe" within the meaning of the Act if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.* § 404.1520(c).

If the claimant has at least one severe impairment, the ALJ proceeds to step three. There, the ALJ determines whether the claimant's impairment or impairments meet or medically equal the criteria of the impairments listed in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(a)(4)(iii). If the claimant does not have an impairment that both meets or medically equals a Listing and satisfies the Act's durational requirement, *see id.* § 404.1509, the ALJ must

determine the claimant's residual functional capacity ("RFC"), *id.* § 404.1520(e). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see* 20 C.F.R. § 404.1545.

At step four, the ALJ determines whether, in light of the RFC assessment, the claimant is capable of performing any past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is unable to perform any past relevant work, the ALJ proceeds to the fifth and last step. At this step, the burden shifts to the Commissioner to demonstrate that, taking into account the claimant's age, education, work experience, and RFC, the claimant is capable of performing substantial gainful work that exists in the national economy. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see* 20 C.F.R. § 404.1520(a)(4)(v).

## II. Review by the Court

The Court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying an application for DIB. It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted). Instead, in performing its review, the Court is "limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian*, 708 F.3d at 417 (citation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they are

"conclusive." 42 U.S.C. § 405(g). In other words, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

## DISCUSSION

### I. The ALJ's Decision

The ALJ applied the five-step, sequential evaluation described above in determining whether Plaintiff was disabled. Before proceeding to step one, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2027. (Dkt. 3 at 23).

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since April 3, 2022, the alleged onset date. (*Id.*). The ALJ found at step two that Plaintiff had the medically determinable impairments of: "right distal bicep tear, status-post surgical repair; right Achilles tendon tear, status-post surgical repair; left elbow medial epicondylitis; essential hypertension; and obesity[.]" (*Id.* at 24). The ALJ concluded that these impairments, both individually and in combination, did not significantly impact Plaintiff's ability to perform basic work activities. (*Id.* at 24-29). The ALJ therefore found that Plaintiff did not have "a severe impairment or a

combination of impairments that are severe[.]" (*Id.* at 30).

Because the ALJ concluded at step two that Plaintiff did not have a severe impairment or combination of impairments, he did not proceed past that step in the sequential evaluation, and concluded that Plaintiff was not disabled, as defined in the Act, from April 3, 2022, through the date of the ALJ's decision. (*Id.* at 30).

## II. <u>The Commissioner's Determination is Supported by Substantial Evidence and Does Not Contain a Reversible Legal Error</u>

Plaintiff argues that the ALJ erred in concluding that he had no severe impairments, and in failing to proceed through the rest of the sequential evaluation. (Dkt. 5-1 at 9, 11, 16). The Court is unpersuaded by these arguments, for the reasons that follow.

### A. <u>The Step Two Severity Determination</u>

The step two severity determination "is intended to increase the efficiency and reliability of the disability evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled." *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 295 (W.D.N.Y. 2016) (alterations and quotation omitted). As noted above, a severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).

While only "*de minimis* claims" should be screened out at step two, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe," *Taylor v.*

*Astrue,* 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (quotations omitted). An impairment is non-severe "if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work." *Howard*, 203 F. Supp. 3d at 296.

### B. Plaintiff's Medically Determinable Impairments

The ALJ and the parties agree that Plaintiff has the medically determinable impairments of (1) a right distal biceps tendon tear, (2) a right Achilles tendon tear, (3) left elbow medial epicondylitis, (3) hypertension, and (4) obesity.[2] (*See, e.g.,* Dkt. 3 at 24, Dkt. 5-1 at 11; Dkt. 7-1 at 11-13). In addressing Plaintiff's arguments in favor of remand, it is helpful to summarize each of these conditions.

First, Plaintiff tore his right distal bicep while at work as a firefighter on December 10, 2008. (*Id.* at 257). On December 23, 2008, Dr. Geoffrey A. Bernas performed surgery on Plaintiff to repair his bicep, and on June 5, 2009, Dr. Bernas reported that Plaintiff appeared "fully recovered" and able to work "without restrictions." (*Id.* at 262, 267, 277). Plaintiff subsequently returned to work. During the hearing, Plaintiff said that his bicep tear did not bother him. (*Id.* at 47-48, 54).

---

[2] Plaintiff also argues in passing that his "bilateral shoulder impairment," caused by a suspected shoulder "sprain," in part supports a finding that he should be limited to light exertional work. (Dkt. 5-1 at 17). The record indicates that on November 12, 2017, Plaintiff went to the Erie County Medical Center for an exam regarding left shoulder pain caused by a car accident he suffered at work. (Dkt. 3 at 408). At the time, Plaintiff reported that his shoulder pain was a two out of ten. (*Id.*). The attending physician, Dr. Ruchard S. Krause, diagnosed Plaintiff with "suspected shoulder *strain*" and recommended he take ibuprofen. (*Id.* at 409 (emphasis added)). Plaintiff levies no further argument that his suspected shoulder injury constitutes a severe impairment, and the record does not support such a conclusion. Therefore, the Court declines to address this issue further.

Second, Plaintiff tore his right Achilles tendon on July 14, 2020, while exercising on a Stairmaster. (*Id.* at 351, 288). Dr. Mark J. Anders performed surgery on Plaintiff to repair his Achilles tendon on July 22, 2020. (*Id.*at 296). About five months later, Dr. Anders cleared Plaintiff to return to work as of January 11, 2021. (*Id.* at 298). Following Plaintiff's final post-surgery appointment on February 2, 2021, Dr. Anders noted that Plaintiff required no further treatment and had no restrictions on the use of his legs. (*Id.* at 397-99). Plaintiff returned to work on January 25, 2021. (*Id.* at 48, 311).

Third, Plaintiff has had hypertension, or high blood pressure, since 1996. (*Id.* at 351). During a check-up on February 13, 2023, Dr. Gregory A. Jobes asserted that Plaintiff's high blood pressure was "controlled[.]" (*Id.* at 386). At the hearing before the ALJ, Plaintiff reported that he was taking two prescription medications that, coupled with his recent weight loss, helped him manage his high blood pressure. (*Id.* at 49).

Fourth, Plaintiff fell onto his left elbow around July 2015 and developed left elbow medial epicondylitis. (*Id.* at 270). Plaintiff applied ice to his elbow and took ibuprofen to treat the issue. (*Id.*). At a follow-up appointment on October 15, 2015, Certified Physician's Assistant ("PA-C") Sara K. Dann noted that Plaintiff's epicondylitis "appeared to be resolving." (*Id.* at 271). Plaintiff reported during the Hearing that his that his epicondylitis had "healed as well." (*Id.* at 48).

Finally, Plaintiff has been overweight since at least 2018. (*See id.* at 287). Progress notes written by Dr. Jobes on February 13, 2023, indicate that Plaintiff had

recently lost 20 pounds. (*Id.* at 386). During the hearing, Plaintiff also reported that he had recently lost weight due to improved diet and exercise habits. (*Id.* at 49-50).

When the ALJ asked why, after being cleared to return to work after his Achilles tendon surgery, Plaintiff stopped working on April 3, 2022, he responded that the cold made his job difficult and that he thought it was a "good time" to retire. (*Id.* at 48).

### C. <u>**The ALJ's Analysis of Medical Opinions**</u>

Plaintiff's primary argument in support of his contention that the ALJ erred at step two is that the ALJ should not have rejected the opinion of consultative examiner Dr. Hongbiao Liu. (Dkt. 5-1 at 14-16). Plaintiff also argues that the ALJ's rejection of Dr. Liu's opinion created a gap in the record that the ALJ was obliged to fill. (*Id.* at 12-14). These arguments are no persuasive, as set forth below.

On January 19, 2024, Dr. Hongbiao Liu conducted an orthopedic examination of Plaintiff. (*Id.* at 450-59). Dr. Liu opined that although Plaintiff walked with a limp on his right side, his lower extremities had full range of motion—except his right ankle—and an X-ray of his right ankle was normal. (*Id.* at 450-51). Dr. Liu concluded that Plaintiff had "mild to moderate limitation for prolonged walking, bending, kneeling, squatting, stair climbing, carrying heavyweights, prolonged sitting or standing." (*Id.* at 451).

The ALJ found Dr. Liu's opinion not persuasive because Plaintiff declined to change for the examination, thus limiting Dr. Liu's ability to observe his functioning, and because Dr. Liu's opinion that Plaintiff had limited right ankle motion was based

on self-reports rather than objective findings and was inconsistent with the other medical opinions of record. (*Id.* at 29).

In adjudicating a disability application, an ALJ must consider and weigh the evidence of record, including medical opinions. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). The Commissioner's regulations set forth the following factors that the ALJ considers when assessing the persuasiveness of a medical opinion: (1) supportability, meaning that, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be"; (2) consistency, meaning that, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be"; (3) relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and whether the relationship included a physical examination; (4) specialization, meaning that the opinion of a specialist "may be more persuasive about medical issues related to his or her area of specialty" than the opinion of a non-specialist; and (5) "other factors that tend to support or contradict a medical opinion," which includes but is not limited to "evidence showing a medical source has familiarity with the other evidence in the

claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability and consistency are the most important factors and must be discussed in the ALJ's decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, explain how he or she considered the other factors. *Id.*

The Court finds no error in the ALJ's assessment of Dr. Liu's opinion. First, the ALJ appropriately considered supportability, noting that Dr. Liu's ability to examine Plaintiff had been hindered by Plaintiff's refusal to change for the examination, and that Dr. Liu appeared to have based portions of his opinion solely on self-reported complaints rather than objective medical evidence. *See, e.g., Michelle L. P. v. Comm'r of Soc. Sec.*, No. 5:24-CV-00882 (AMN/TWD), 2025 WL 2933191, at *8 (N.D.N.Y. July 25, 2025) ("Dr. Fkiaras' evaluation was reasonably interpreted by the ALJ to be based in large part on Plaintiff's self-reporting. . . . An ALJ may reject a medical opinion based on such self-reporting."), *adopted*, 2025 WL 2525465 (N.D.N.Y. Sept. 3, 2025); (*see also* Dkt. 3 at 29).

Second, the ALJ appropriately considered consistency and noted that the other medical opinions of record found limitations less restrictive than those identified by Dr. Liu. These opinions included a medical opinion regarding Plaintiff's Achilles tendon injury by consultative examiner Dr. Russell Lee issued on July 27, 2022. (Dkt. 3 at 351-53). Therein, Dr. Lee opined that Plaintiff had "mild limitation in activities involving prolonged standing and walking great distances." (*Id.* at 353). The ALJ found Dr. Lee's opinion somewhat persuasive, noting that his finding of mild

limitations appeared to be based solely on Plaintiff's subjective complaints, and not the objective medical evidence, which showed normal gait and stance, the ability to do a full squat and walk on heels and toes without difficulty, a full range of motion in the bilateral hips, knees, ankles, and upper and lower extremities, and no sensory deficits. (*Id*. at 28; *see id*. at 351-53). The ALJ noted that Dr. Lee's finding of only mild limitations in prolonged standing and walking great distances was in any event consistent with the finding of no severe impairment. (*Id*. at 28).

The ALJ also appropriately considered and relied upon the opinion of treating physician Dr. Anders. In a treating medical source statement dated November 14, 2023, Dr. Anders opined that despite Plaintiff's Achilles tendon injury in 2020, he required no further treatment, was capable of high-stress work, had no limiting impairments, had no restriction on walking city blocks, would not need to take unscheduled breaks during a typical workday, would not need to elevate his legs after prolonged sitting, and would not require a cane. (*Id.* at 398-400). The ALJ found Dr. Anders' opinion persuasive, given that he was Plaintiff's primary care physician and that the opinion was consistent with others in the record. (*Id.* at 29).

Finally, the ALJ considered and relied upon the opinions of state agency reviewing physicians Dr. D. Brauer and Dr. J. Lawrence, both of whom opined that Plaintiff had no severe physical impairment. (*Id*.; *see id*. at 73, 80).

Plaintiff's claim that the ALJ should not have rejected Dr. Liu's opinion amounts to a disagreement regarding the resolution of genuine conflicts in the evidence. (*See* Dkt. 7-1 at 14). "If evidence is susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). On the record before it, the Court does not find that it was irrational for the ALJ to reject Dr. Liu's opinion and conclude that Plaintiff did not have any severe limitations. The ALJ reasonably relied on the opinions of several physicians in reaching this conclusion, including notably Dr. Anders, who treated Plaintiff for the Achilles tendon condition that Plaintiff contends rendered him disabled. These opinions, and the records underlying them, constitute substantial evidence for the ALJ's determination.

**D. <u>Development of the Record</u>**

Plaintiff's other argument in favor of remand is that the ALJ failed to properly develop the record by rejecting Dr. Liu's opinion. (Dkt. 5-1 at 16). Plaintiff points out that the ALJ ordered a consultative examination because he perceived a gap in Plaintiff's treatment records. Plaintiff argues that in subsequently rejecting the opinion, the ALJ "perpetuate[ed] the gap[.]" (*Id.* at 13-14).

Plaintiff thus essentially contends that if an ALJ orders a consultative examination to fill a gap in the record, he must credit the consultative examiner's opinion over the other medical opinions of record. But neither the Commissioner's regulations nor the relevant case law imposes such a requirement. *See Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) ("No case or regulation . . . imposes an unqualified rule that a medical opinion is superseded by additional material in the record[.]").

Dr. Liu's physical examination of Plaintiff in January 2024 provided updated

information regarding Plaintiff's physical condition. The ALJ had that evidence, along with all of the medical opinions of record, Plaintiff's testimony, and the complete treatment record, available to him in reaching his determination. Under these circumstances, the ALJ had no obligation to further develop the record. *See Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022) ("An ALJ generally has an affirmative duty to develop the administrative record . . . to fill a record consisting only of sparse and conclusory notes of a single treating physician. . . . [But here] there was a complete record before the ALJ consisting of medical opinions, treatment notes, and test results . . ., as well as [Plaintiff]'s own testimony.") (quotations and citations omitted).

"The claimant bears the burden of presenting evidence establishing severity." *Taylor*, 32 F.Supp.3d at 265. The ALJ reasonably concluded in this case that Plaintiff had not demonstrated that he has a severe impairment or combination of impairments. Remand is thus not warranted.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 5) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. 7) is granted. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: Rochester, New York
September 29, 2026